IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| **CLIFFORD CLARK** § | |
| § | |
| Petitioner § | |
| § | |
| v. § | Case No. 5:22-cv-131, -132, -133, -134 |
| § | |
| **DIRECTOR, TDCJ-CID** § | |
| § | |
| Respondent § | |

### ORDER

Before the Court is the Report of the United States Magistrate Judge recommending dismissal of this consolidated action with prejudice as barred by the statute of limitations. Docket No. 25. Petitioner Clifford Clark, proceeding *pro se*, filed the above-styled consolidated petitions for the writ of habeas corpus under 28 U.S.C. § 2254 challenging the legality of his conviction. The case was referred to the United States Magistrate Judge in accordance with 28 U.S.C. § 636.

**I. Background**

Petitioner was convicted of three counts of arson and two counts of harassment by a person in a correctional facility on November 30, 2018. Docket No. 3 at 1. He received sentences of 30, 20, and 10 years for the arson counts, running concurrently, and 10 years for the two harassment counts, running concurrently to one another but consecutively to the arson sentences. *Id.*; *see* Docket Nos. 19-4 at 57–60; 19-9 at 55–56, 19-14 at 104–05, 19-17 at 99–100.

On direct appeal, the Sixth Judicial District Court of Appeals affirmed Petitioner's convictions with minor modifications, in that the appellate court deleted the phrase "terms of plea bargain" and deleting the assessment of court costs from the harassment convictions. *See Clark v. State*, 592 S.W.3d 919, 933 (Tex. App.—Texarkana 2019, *pet. ref'd*). The Texas Court of Criminal Appeals denied Petitioner's petitions for discretionary review on March 11, 2020.

Petitioner then sought state habeas corpus relief. His petitions are signed November 20, 2020, but were filed on February 10, 2021. *See* Docket No. 19-67 at 26–56. These petitions were denied without written order on the findings of the trial court without a hearing and on the court's independent review of the record on August 18, 2021. Docket No. 19-74.

Petitioner's federal habeas corpus petitions are signed on August 1, 2022, but were not filed until October 20, 2022. *See, e.g.*, Docket No. 3. He argues that he received ineffective assistance of counsel, that one evaluation found him incompetent to stand trial while a second one was inconclusive, the trial judge is not a doctor and could not certify him as competent, and the prosecutor did not follow the court's order not to bring up prior offenses without judgments.

Respondent filed a preliminary answer arguing that the consolidated petitions should be barred by the statute of limitations. Docket No. 18. Petitioner filed a reply arguing that he had been subjected to restrictive housing and multiple unit transfers, including a transfer to a mental health program called PAMIO, the Program for Aggressive Mentally Ill Offenders. Docket No. 23. He also said that he was subjected to a Covid-19 lockdown. *Id.* As a result, Petitioner said that he received his legal mail late, despite filing change of address notifications, and his mail was sometimes sent to the wrong address despite his filing these notifications. *Id.*

Petitioner maintained that he filed his federal habeas petition timely after learning that his petition for discretionary review was denied and all of his state remedies were exhausted. *Id.* He also said that he diligently pursued his rights and was innocent, but he has little knowledge of the law. *Id.* In his supplemental reply, Petitioner said that he sent his federal habeas petition off immediately after his state petition was rejected. *Id.* He also said that he had a civil rights lawsuit at that time, and he began receiving notifications about his habeas petitions after he lost his civil case. *Id.* Petitioner insisted that he did everything in a timely manner. *Id.*

## II. The Report of the Magistrate Judge

After review of the pleadings and state court records, the Magistrate Judge issued a Report recommending that the petition be dismissed as barred by limitations. Docket No. 25. After setting out the law on limitations, the Magistrate Judge observed that Petitioner's conviction became final on Tuesday, June 9, 2020, when his time for seeking certiorari from the denial of his petitions for discretionary review elapsed. *Id.* at 4 (citing *Roberts v. Johnson*, 319 F.3d 690, 693 (5th Cir. 2003)). His one-year limitations period began to run at that time and expired on Wednesday, June 9, 2021, absent the operation of other factors. *Id.* The signature date on Petitioner's federal habeas petitions is August 1, 2022, more than a year after the limitations period expired. *Id.* Although Petitioner complained of restrictive housing, unit transfers, a Covid-19 lockdown, and late receipt of legal mail, the Magistrate Judge determined that these circumstances did not amount to unconstitutional state-created impediments to the seeking of habeas corpus relief. *Id.* at 5. The Magistrate Judge further stated Petitioner does not contend that he is asserting a right which has been newly recognized by the U.S. Supreme Court and made retroactively applicable to cases on collateral review. *Id.* Thus, the Magistrate Judge concluded that Petitioner had not shown a statutory basis for commencing the limitations period on a later date than June 9, 2020. *Id.*

Petitioner's state habeas petitions bear a signature date of November 20, 2020, but were filed on February 10, 2021. The Magistrate Judge assumed, without deciding, that these petitions were in fact delivered to prison officials for mailing on November 20, 2020. *Id.* at 6–7.

Under these circumstances, the Magistrate Judge stated that Petitioner's state habeas petitions began tolling the limitations period on November 20, 2020, after 164 days of the period had elapsed. *Id.* This period began to run again on August 18, 2021, with 201 days left, resulting in a limitations period expiration date of Tuesday, March 8, 2022. *Id.* However, Petitioner signed

his federal habeas petitions on August 1, 2022, over four months after his limitations period expired. *Id.*

The Magistrate Judge next considered the issue of actual innocence. *Id.* at 6–7. While a persuasive showing of actual innocence can serve as a gateway through which a petitioner may avoid the statute of limitations, the Magistrate Judge stated that a habeas petitioner does not meet the threshold requirement of actual innocence unless he shows that in light of newly discovered evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. *Id.* Petitioner claims that he is actually innocent, but he does not point to any newly discovered exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, or critical physical evidence which was not presented at trial, in light of which no reasonable juror would have voted to find him guilty beyond a reasonable doubt. *Id.* Instead, his assertions of innocence are entirely conclusory, which the Fifth Circuit has held to be insufficient. *Id.*

Finally, the Magistrate Judge considered the question of equitable tolling of the limitations period. *Id.* at 7–10. Although Petitioner said that he was found incompetent to stand trial on one occasion while another examination was inconclusive, the state appellate court decision stated that when Petitioner was first examined for competency, the psychologist could not form an opinion because of Petitioner's lack of cooperation, and at the second exam, the psychologist determined that Petitioner was competent to stand trial. *Id.* In addition, Petitioner himself testified at a pre-trial hearing that he knew the charges against him, and he knew who the prosecutor, judge, and defense counsel were and what they did. *Id.* He said that he did not believe that there was anything mentally wrong with him and that he understood what was going on in court. *Id.*

The Magistrate Judge stated that while mental incompetency may equitably toll the statute of limitations, it does not do so as a matter of right. *Id.* Instead, the petitioner must make a threshold

showing of incompetence and must show that this incompetence affected his ability to file a timely habeas petition, by presenting sufficient facts to show that the mental illness or impairment precluded him from asserting his rights. *Id.* at 8 (citing *Jones v. Stephens*, 541 F. App'x 499, 505 (5th Cir. 2013); *Smith v. Johnson*, 247 F.3d 240 at *2 (5th Cir. 2001)).

In this case, the Magistrate Judge determined that Petitioner failed to present sufficient facts to show that his claimed mental illness or impairment affected his ability to file a timely habeas petition. He did not make a threshold showing of incompetency nor did he present sufficient facts to show that his alleged mental illness or impairment precluded him from asserting his rights.

Finally, the Magistrate Judge concluded that Petitioner's claims concerning his legal mail, lockdown, and transfers likewise did not warrant equitable tolling of the limitations period. The Magistrate Judge therefore recommended that the petition for habeas corpus relief be dismissed as barred by limitations.

**III. Petitioner's Objections to the Report**

In his objections, Petitioner asserts that his limitations period should have been equitably tolled. Docket No. 30. He says that "given the unusual obstacles that confronted petitioner Clark in filing his petition, his repeated attempts to obtain his record and comply with the deadline, and the district court initial grant of a motion to extend the deadline, equity required that his failure to file a completed petition before deadline governed by 28 U.S.C. § 2244(d)(1)(A) should be forgiven and it was an abuse of discretion to deny the tolling of the deadline." *Id.* at 2.

Petitioner says that, for over a year, he was unable to obtain proper records and legal work or legal mail due to a TDCJ memorandum instituted after an inmate escaped and killed a family. *Id.* He says that he persistently sought to obtain his cases and legal material from his attorney and to get his legal proper from his former units after transfer, but he was in restrictive housing and

constantly being "put on the chain" (*i.e.*, transferred) due to lawsuits he filed. *Id.* Each time he was put on the chain, he says that he had to wait extremely long periods to retrieve his property. *Id.*

As a result, Petitioner says that he was impeded in his efforts to present important arguments he wished to present, including ineffective counsel, prosecutorial misconduct, counsel withholding exculpatory evidence, professional misconduct, and deliberate prejudice being allowed to enter the courts. Without his file, Petitioner says that he had no hope of raising plausible arguments on any ground in a timely manner. *Id.* He states that he wrote to an innocence program project but heard nothing back, he wrote his public defender countless times, and he filed multiple grievances about his property, but no remedy was granted. *Id.* at 3.

Petitioner asserts that because he filed civil lawsuits, prison officials continually confiscated his habeas corpus petitions along with his legal materials. *Id.* He says that he was retaliated against and exposed to constant threats of harassment daily, as documented in his lawsuits and grievances. *Id.* Petitioner argues that "a correctional officer or official confiscation of a prisoner's draft habeas petition and related papers can justify equitable tolling of the one year limitation period." He complains that his legal mail and petitions were missing when he was able to recover his property. *Id.* 3–4.

Petitioner next presents a new ground for habeas corpus relief, asserting that his rights under the Confrontation Clause were violated because the State's key witness, Harold Friday, did not show up to testify and was not cross-examined. *Id.* at 5–8. Following this, he again argues that such conditions as restrictive housing, limited access to the law library, being shipped from unit to unit, having difficulty obtaining property because of the TDCJ escape memorandum, being subjected to harassment, and the retaliatory confiscation of his legal mail and materials impeded his ability to present the arguments he wished to press. *Id.* at 9. Apparently referring to legal research materials, he says that the most he could hope for was limited material once or twice

every two weeks, and he could not keep this material in his cell for long periods of time. *Id.* at 10. According to Petitioner, he needed personal photocopies but could not get these due to lack of funds. Petitioner further states that he was unrepresented by counsel during this time, and this led him to err by filing only motions for extension of time and incomplete petitions before the deadline. *Id.*

Petitioner argues that the doctrine of equitable tolling preserves a claim when strict application of the statute of limitations would be inequitable. *Id.* at 11–13. He says that he was advised to file an 11.07 (i.e., a state habeas petition) after the rejection of his petition for discretionary review, and then file a federal petition, and then seek certiorari, which he has been doing. *Id.* at 11. He says that the requirement for equitable tolling is "reasonable diligence" rather than "maximum feasible diligence." *Id.*

Next, Petitioner maintains that the unprofessional misconduct of his attorney was so egregious as to create extraordinary circumstances warranting equitable tolling. *Id.* at 14. He argues that she took too long to find witnesses who could have given him a solid alibi and says that she did not retrieve evidence from locations which have provided a digital time and date, showing his actual location when the crimes were being committed by an unknown person. *Id.* He wrote letters asking that she be removed as his attorney and says that the prosecutors and the judge were aware of the hostile relationship between Petitioner and his counsel. *Id.* He says that he refused to go to court because of this hostile relationship and that counsel had no experience in either arson or harassment cases. *Id.* He says that he also attempted suicide multiple times. *Id.* Petitioner states that the failure to investigate his alibi in a timely manner to preserve evidence and prove his innocence was detrimental and led to his conviction. *Id.*

**IV. Discussion**

Petitioner's arguments for equitable tolling center around his claims that he was unable to get or retain access to his records and legal materials for various reasons, including restrictive housing, unit transfers, an unspecified "TDCJ memorandum" regarding an escape, and alleged confiscations of his documents by prison officials. In *Tiner v. Treon*, 232 F.3d 210, 2000 WL 1273384 (5th Cir. 2000), a petitioner asserted that the State, the prosecutor, and defense counsel would not provide him with a copy of his state records, thus preventing him from filing a timely habeas petition. The Fifth Circuit explained that equitable tolling primarily applies when a plaintiff is misled by the defendant about the cause of action or is prevented in some extraordinary way from exercising his rights and that tolling should not be applied unless the circumstances presented in a particular case are on par with the conditions listed in § 2244(d). *Id.* at *1. The court went on to hold that the petitioner's allegations did not constitute rare and exceptional circumstances warranting equitable tolling and that he failed to show that the State actively misled him or prevented him from filing a timely habeas petition. *Id.*

Similarly, in *Roughley v. Cockrell*, 45 F. App'x 326, 2002 WL 1899622 (5th Cir. 2002), a petitioner argued that limitations should be tolled for the 23 days between the denial of his state habeas petition and his receipt of notice of that decision because he was in transit between units and the notice had to be forwarded to him. The Fifth Circuit observed that the petitioner had an additional three months following the notification in which to effectuate a timely federal filing and his request for state court records was insufficient to establish that he proceeded with due diligence in pursuing his federal claims, because "the similarity in the claims raised in his state and federal petitions precludes a finding that the lack of state court records prevented him in some extraordinary way from asserting his right to file a federal petition." *Id.* at *1; *see also Waddleton v. Davis*, No. 17-40718, 2018 WL 3968204 (5th Cir. Mar. 28, 2018) (claim that the State failed to

respond to petitioner's attempts to obtain his trial records did not provide a basis for equitable tolling); *Banks v. Director, TDCJ*, No. 1:24-CV-12-H, 2025 WL 105672 at *3 (N.D. Tex., Jan. 15, 2025) ("the conditions petitioner complains of—difficulty obtaining records, prison lockdowns, and transfers between units—are common parts of prison life and not extraordinary circumstances that warrant equitable tolling"); *Tate v. Parker*, 439 F.App'x 375, 376 (5th Cir. 2011) (temporary denial of access to research materials or the law library and inadequacies in the law library are not extraordinary circumstances warranting equitable tolling); *United States v. Tapia*, No. 24-10573, 2024 WL 5265361 at *1 (5th Cir. Nov. 26, 2024) (lack of fluency in English, lack of legal knowledge, and consequences resulting from Covid-19 restrictions, prison lockdowns, and prison transfers including the loss of legal files, inability to use the law library or legal materials, telephone restrictions, and lack of staff or inmate assistance did not amount to extraordinary circumstances sufficient to warrant equitable tolling). Likewise, Petitioner in this case has not shown extraordinary circumstances justifying equitable tolling.

In addition, as the Magistrate Judge observed, Petitioner says that he filed his state habeas petitions on November 20, 2020, which was 164 days after his conviction became final. These petitions tolled the limitations period while they were pending and gave him 201 days after the petitions were denied—some six and a half months—in which to seek federal habeas corpus relief. As in *Roughley*, Petitioner offers no reason why he could not have timely sought federal habeas corpus relief by timely filing a federal petition or petitions raising some or all of the claims he presented in his state applications. These state applications cited numerous cases and referred to the records of his conviction, indicating that Petitioner had access to legal materials and his records within that time period. His objections on this point are without merit.

Although Petitioner complains of an alleged Confrontation Clause violation at trial, he fails to show that this circumstance—about which he knew or should have known at trial—offers any

basis for setting aside the Magistrate Judge's Report. Similarly, he complains about his attorney's failure to investigate his alibi defense, but this too fails to present any basis for rejecting the Report.

Finally, Petitioner refers to a claim of actual innocence, indicating that he had a defense of alibi showing that he was elsewhere when the crimes were committed. The Magistrate Judge rejected actual innocence as a basis upon which to excuse the statute of limitations, stating that Petitioner failed to point to any newly discovered exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, or critical physical evidence which was not presented at trial, in light of which no reasonable juror would have voted to find him guilty beyond a reasonable doubt. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *Schlup v. Delo*, 513 U.S. 298, 329 (1995). Petitioner's objections simply reassert his claim of innocence but offer nothing to controvert the Magistrate Judge's conclusion. His objections are without merit.

## V. Conclusion

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. § 636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and Petitioner's objections are without merit. Accordingly, it is

**ORDERD** that Petitioner's objections (Docket No. 20) are **OVERRULED**. It is further

**ORDERED** that the Report of the Magistrate Judge (Docket No. 25) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the above-styled petitions for the writ of habeas corpus are **DISMISSED WITH PREJUDICE**. It is further **ORDERED** that a certificate of appealability is denied *sua sponte*.

**So ORDERED and SIGNED this 13th day of June, 2025.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE